**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KENYATTA BROWN,** | ) | |
| | ) | **Case No.:**_____ |
| **Plaintiff,** | ) | |
| **v.** | ) | **JUDGE:**_____ |
| | ) | |
| **EBY-BROWN COMPANY, LLC** | ) | **MAGISTRATE JUDGE:**_____ |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES the Plaintiff, KENYATTA BROWN, (hereinafter referred to as "Plaintiff" and/or "BROWN") by and through her undersigned counsel of record, and complaining against Defendant EBY-BROWN COMPANY, LLC, (hereinafter referred to as "Defendant" and/or "Eby-Brown"), and in doing so states as follows:

## INTRODUCTION

1.      Plaintiff, Kenyatta Brown complains against Defendant for unlawful disability discrimination, failure to accommodate, failure to engage in an interactive process or engage in an interactive process *in good faith* to determine if reasonable accommodations could be made to the known disabilities of Plaintiff, termination and related unlawful conduct constituting violations of the Americans with Disabilities Act of 1990, §2 *et. seq.*, 42 U.S.C.A. §12101, *et. seq.* ("ADA").

2.      This case is about Eby-Brown's blatant, willful, and deliberate attempts to violate the law through shocking disability discrimination, failure to accommodate, failure to engage in an interactive process and the unlawful termination of a hard working employee afflicted with "Sciatica" which causes pain, tingling, numbness and paralysis in her left leg, left foot and back.

1

Plaintiff contracted Sciatica in 1998, after suffering a gunshot wound. Plaintiff had Sciatica when she was hired by Eby-Brown in February 2007. Plaintiff was originally assigned to work on the warehouse floor, but was provided a reasonable accommodation to her Sciatica in March 2007, and was reassigned as a warehouse office worker, where she performed all of the essential functions of that position. In September 2008, under new management and after training two new warehouse office workers, Defendant told Ms. Brown that it could no longer accommodate her restrictions and that she was now required to split her work days, four (4) hours in the warehouse office and four (4) hours on the warehouse floor. In October 2008, Defendant told Ms. Brown she would now be required to work full time on the warehouse floor. When Ms. Brown complained that she could not perform her duties on the warehouse floor due to her Sciatica and the paralysis it caused her in her leg and foot, she was forced out on FMLA and told that she could not return until she was released to full duty (no restrictions) as a warehouse floor worker. After withdrawing the reasonable accommodation it had provided Plaintiff for seventeen months and refusing to engage in an interactive process, Defendant terminated Plaintiff Brown because it did not want to grant her the reasonable accommodation of working in the warehouse office. In February 2009, Defendant terminated Plaintiff because she could not provide a doctors note stating that she was no longer disabled and was cleared to return to work full-duty, no restrictions.

      3.     Plaintiff Brown was an outstanding employee of Defendant that made substantial contributions to Defendant's operations, and during all relevant times performed her job responsibilities in a manner that met or exceeded Defendant's legitimate business expectations.

      4.     Plaintiff is a qualified individual with disabilities ("Sciatica" "left leg and left foot paralysis") who was unlawfully subjected to discrimination on the basis of her disabilities and

2

unlawfully terminated as a direct result of her disabilities and requests for reasonable accommodations.

5.     Despite Plaintiff's dedicated employment, and despite Plaintiff's obvious need for accommodation, Defendant refused to continue granting Plaintiff and reasonable accommodation of warehouse office work, failed to grant Plaintiff a reasonable accommodation and instead terminated Plaintiff.

6.     Plaintiff has suffered severe damages as a direct and proximate result of the discrimination against him on the basis of her disabilities and her unlawful termination from employment.

<u>**PARTIES**</u>

**a.     Plaintiff**

7.     Plaintiff, Kenyatta Brown, is a resident of Sangamon County, Illinois who currently resides at 2139 East Adams Springfield, IL 62703.

**b.     Defendant**

8.     Defendant, EBY-BROWN COMPANY, LLC ("EBY-BROWN"), is a corporation incorporated under the laws of the state of Delaware, with its headquarters located in Naperville, Illinois. At all times relevant to this Complaint, Eby-Brown transacted business throughout the State of Illinois and in this District and employed Plaintiff Brown within this District.

9.     Defendant Eby-Brown is engaged in an industry affecting commerce and employs more than fifteen (15) employees and is a covered entity within the meaning of the ADA, 42 U.S.C. § 12111.

## JURISDICTION AND VENUE

10.    The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1343(3) and (4), 1658, 2201, and 2202. This is a suit authorized and instituted pursuant to the Act of Congress known as the "Americans with Disabilities Act of 1990," §2 *et. seq.*, 42 U.S.C.A. §12101, *et. seq.*

11.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b), in that Defendant employed Plaintiff in the Northern District, Defendant resides in the Northern District and all or a substantial part of the events or omissions giving rise to the claims occurred within the Northern District.

## PROCEDURAL HISTORY

12.    Plaintiff filed a "Charges of Discrimination" with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC") on or about April 9, 2009, alleging violations of the Americans with Disabilities Act of 1990, §2000 *et. seq.*, and the Illinois Human Rights Act, 775 ILCS 5/2-101 *et. seq. See April 9, 2009, Charge of Discrimination attached hereto as Exhibit "A".*

13.    The EEOC issued a "Notice of Right to Sue" dated June 4, 2010. *See June 4, 2010, Notice of Right to Sue, attached hereto as Exhibit "B".*

14.    Plaintiff has timely filed this lawsuit within ninety (90) days from the date of receipt of the June 4, 2010, Notice of Right to Sue.

15.    Plaintiff fulfilled all conditions precedent to the institution of this action under the ADA.

## COMMON ALLEGATIONS

16.     Plaintiff Brown began her employment with Defendant on or about February 9, 2007.

17.     Plaintiff Brown was hired as a warehouse worker and originally assigned duties on the warehouse floor.

18.     Plaintiff Brown is disabled within the meaning of the ADA.

19.     Plaintiff Brown suffers from the physical impairment of Sciatica and left foot and left leg paralysis which substantially limit major life activities.

20.     Plaintiff Brown's Sciatica and left foot/left leg paralysis substantially limits one or more of Plaintiff's major life activities, including, but not limited to, walking and standing.

21.     During all relevant times herein, Defendant was a covered entity as defined by the ADA.

22.     At all relevant times herein, Plaintiff Brown informed Defendant of the nature and scope of her disabilities and Defendant was aware of Plaintiff's disabilities.

23.     In March 2007, at Plaintiff's request, Defendant granted Plaintiff the reasonable accommodation of being reassigned duties in the warehouse office as opposed to the warehouse floor, where Plaintiff had been suffering physically due to her disabilities.

24.     Plaintiff was an outstanding employee of Defendant that made substantial contributions to Defendant's operations, and during all relevant times performed her job responsibilities in a manner that met or exceeded Defendant's legitimate business expectations. Plaintiff had an outstanding work history and was never subjected to disciplinary action during her employment with Defendant. Plaintiff was an excellent, qualified, and dedicated employee.

5

25.     Plaintiff was a qualified individual capable of performing the essential functions of her job with reasonable accommodations.

26.     In August and September 2008, under new management, Defendant hired and Plaintiff trained, two new, non-disabled warehouse office workers, Elisabeth and Juanita.

27.     In September 2008, under new management, Defendant informed Plaintiff that she was now going to be required to split her days, working four (4) hours in the warehouse office and four (4) hours on the warehouse floor.

28.     When Plaintiff complained about Defendant refusing the accommodation of warehouse office duties, Defendant told Plaintiff Brown it needed more documentation of her disability and restrictions from her doctor.

29.     During September and October 2008, Plaintiff Brown and her doctor provided extensive documentation of Plaintiff's Sciatica, and the corresponding left leg/left foot paralysis and back pain it caused Plaintiff.

30.     Refusing to continue the accommodation it had previously granted Plaintiff Brown for seventeen months, Defendant forced Plaintiff onto FMLA leave.

31.     Despite repeated attempts to return to work performing warehouse office duties, Defendant refused to grant Plaintiff the reasonable accommodation and refused to allow her to return to work until her doctors cleared her to return to work, full duty, with no restrictions.

32.     Plaintiff was unable to provide a doctors note clearing her to return to work, full duty (no restrictions) and Defendant terminated Plaintiff Brown's employment on February 6, 2009, because of her disability.

33. Plaintiff fully advised Defendant of the nature and scope of her medical conditions, informing Defendant through its agents, employees and managers that she needed a reasonable accommodation of warehouse office duties.

34. Defendant discriminated against Plaintiff on the basis of her disability in numerous ways, including, but not limited to, the following:

A. In February, 2007, when Plaintiff was hired, she immediately notified Defendant of her disability and requested a reasonable accommodation for the disability;

B. In March, 2007, Defendant originally granted Plaintiff's request for a reasonable accommodation of her disability and provided her a job in the warehouse office, where she would not be required to stand full-time;

C. In September, 2008, Defendant asked Plaintiff to partially forgo her reasonable accommodation and work four (4) hours a shift in the warehouse, which required her to stand for all four (4) hours, and Plaintiff agreed;

D. In October, 2008, Defendant attempted to completely eliminate Plaintiff's reasonable accommodation and required her to work in the warehouse full time;

E. In October, 2008, Plaintiff objected to working full time in the warehouse, stating she could not work standing full time due to her disability, and requested that her reasonable accommodation of office work be returned to her;

F. In response to Plaintiff's October, 2008, request for her reasonable accommodation to be returned for her, Defendant requested Plaintiff bring a note from her doctor establishing her disability and need for reasonable accommodation;

G. In response to Defendant's request, Plaintiff provided Defendant with a note from her doctor establishing her disability and her need for the reasonable accommodation of office work;

H.    In November, 2008, after Defendant received Plaintiff's doctor's note, Defendant informed Plaintiff it could not reasonably accommodate her disability, even though it had done so for the last seventeen (17) months, and sent her home from work. Defendant informed Plaintiff she could not return to work until her doctor provided her with a note stating she could work full time on the warehouse floor;

I.    In February, 2009, Defendant terminated Plaintiff's employment, because Plaintiff could not obtain a doctor's note stating she was no longer disabled and was fully cleared to work with no restrictions;

J.    From October, 2008 through the date of her unlawful termination, Defendant refused to engage in an "interactive process" to determine if reasonable accommodation could be made for Plaintiff's disability/handicap;

K.    Defendant terminated Plaintiff's employment because of her disability/handicap;

L.    Defendant replaced Plaintiff with a non-disabled/handicapped individual; and

M.    Otherwise treated Plaintiff differently than non-disabled/non-handicapped employees in the terms, conditions, and responsibilities of her employment.

35.    Defendant was fully aware of the nature and scope of the disability-based discrimination. However, Defendant took no action to stop, remediate, investigate or otherwise address the discrimination.

36.    There was no legitimate non-discriminatory basis for Defendant's termination of Plaintiff's employment.

37.    Defendant was aware of Plaintiff's disabilities and need for reasonable accommodation, but ignored and refused its mandatory obligation under the ADA to engage in an interactive process with Plaintiff Brown to identify and implement appropriate reasonable accommodations.

8

38.     Defendant refused to consult with Brown to ascertain her precise job-related limitations and how a reasonable accommodation could overcome those limitations.

39.     Defendant refused to identify potential accommodations and assess their effectiveness in enabling Plaintiff Brown to perform the essential functions of her job.

40.     Defendant refused to consider Plaintiff Brown's preference and select and implement the accommodation most appropriate for both Plaintiff and Defendant.

41.     Defendant simply rejected Brown's requested reasonable accommodation and terminated her on February 6, 2009, without offering other suggestions or at least expressing a willingness to continue discussing possible accommodations.

42.     Defendant refused to engage in the interactive process in good faith.

43.     Defendant failed to engage in an interactive process, rather it flatly rejected Brown's proposed accommodation and offered no practical alternatives.

44.     Defendant intended to discriminate against Plaintiff on the basis of her disabilities and the discrimination concerned the terms, responsibilities, and conditions of Plaintiff's employment with Defendant.

45.     Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, the following: loss of employment, loss of wages, loss of benefits, emotional distress, humiliation, degradation, and other damages.

46.     All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

## COUNT I

**DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION
OF THE ADA 42 U.S.C.A. § 12101, *et. seq.***

47.    Plaintiff Brown realleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

48.    All conditions precedent to Count I have been satisfied.

49.    Plaintiff Brown is a qualified individual with disabilities.

50.    The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of her disability.

51.    Plaintiff Brown is disabled in that she suffers from Sciatica, left leg/left foot paralysis and corresponding back pain.

52.    Plaintiff Brown was diagnosed with Sciatica, left leg/left foot paralysis and corresponding back pain before she became an employee of Defendant.

53.    Plaintiff Brown has a record of her above-described disabilities.

54.    Defendant was aware of Plaintiff Brown's disabilities.

55.    At all relevant times herein, Plaintiff Brown could perform all of the essential functions of her position with reasonable accommodations and met Defendant's legitimate business expectations.

56.    On or about February 6, 2009, Defendant terminated Plaintiff, because of her disabilities and because of Defendant's refusal to grant reasonable accommodations to the known disabilities of Plaintiff.

57.     Defendant was aware of Plaintiff's disabilities and need for reasonable accommodations, but ignored and refused its mandatory obligation under the ADA to engage in an interactive process with Plaintiff Brown to identify and implement appropriate reasonable accommodations.

58.     Defendant refused to consult with Brown to ascertain her precise job-related limitations and how a reasonable accommodation could overcome those limitations.

59.     Defendant refused to identify potential accommodations and assess their effectiveness in enabling Plaintiff Brown to perform the essential functions of her job.

60.     Defendant refused to consider Plaintiff Brown's preference and select and implement the accommodation most appropriate for both Plaintiff and Defendant.

61.     Defendant simply rejected Brown's requested reasonable accommodation and terminated her without offering other suggestions or at least expressing a willingness to continue discussing possible accommodations.

62.     Defendant refused to engage in the interactive process in good faith.

63.     Plaintiff could have been reasonably accommodated but for Defendant's lack of good faith.

64.     Defendant failed to engage in an interactive process, rather it flatly rejected Brown's proposed accommodation and offered no practical alternatives.

65.     Defendant intended to discriminate against Plaintiff on the basis of her disabilities and the discrimination concerned the terms, responsibilities, and conditions of Plaintiff's employment with Defendant.

66.     At all relevant times herein, Plaintiff Brown informed Defendant of the nature and scope of her disabilities.

11

67. At all relevant times herein, Plaintiff was an excellent employee that was performing all of the functions required of her in an outstanding manner.

68. Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

69. Defendant engaged in the herein alleged willfully and malicious violations of the law knowingly and intending to violate federal law.

70. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

    i.      Damages sufficient to compensate Plaintiff for her injuries;

    ii.     Reinstatement or Front Pay;

    iii.    Back Pay, inclusive of lost wages and any benefits;

    iv.    Pre-judgment and post-judgment interest;

    v.     Reasonable attorney's fees;

    vi.    Costs of this action;

    vii.   Emotional Distress Damages;

    viii.  Punitive damages; and

    ix.    Any and all other relief that this Honorable Court may deem just and equitable.

## JURY DEMAND

***JURY DEMANDED ON ALL COUNTS SO TRIABLE***

Dated: September 2, 2010                    /s/Robert M. Foote
                                            Robert M. Foote, Esq. (#03214325)
                                            Matthew Herman, Esq. (#06237297)
                                            Michael D. Wong, Esq. (#06291089)
                                            Foote, Meyers, Mielke & Flowers, LLC
                                            3 North Second Street
                                            Suite 300
                                            St. Charles, IL 60174
                                            Tel. No.: (630)232-6333
                                            Facsimile: (630) 232-6597

                                            Kathleen C. Chavez, Esq. (#6255735)
                                            Chavez Law Firm, P.C.
                                            3 North Second Street
                                            Suite 300
                                            St. Charles, IL 60174
                                            Tel. No.: (630) 232-4480
                                            Facsimile: (630) 232-6597

                                            Peter L. Currie, Esq. (#06281711)
                                            The Law Firm of Peter L. Currie, PC
                                            536 Wing Lane
                                            Saint Charles, IL 60174
                                            Tel. No.: (630) 862-1130
                                            Facsimile: (630) 232-6597

                                            ***ATTORNEYS FOR PLAINTIFF***

## VERIFICATION

I, <u>KENYATTA BROWN</u>, being first duly sworn under oath hereby state that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted,

**KENYATTA BROWN**

Subscribed and Sworn to before me
this 2 day of September 2010.

Notary Public,

"OFFICIAL SEAL"
LIZETH ESQUIVEL
Notary Public, State of Illinois
My Commission Expires 02/01/2011